UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA,       :   INFORMATION
:
:   23 Cr.    (    )
v.                              :
:   18 U.S.C. § 1349
TIMOUR ABRAMOV,                 :
:
:   23 CRIM 050
Defendant.                      :
:
- - - - - - - - - - - - - - - - x

## COUNT ONE

### (Conspiracy to Commit Wire Fraud)

The United States Department of Justice, Antitrust Division, acting through its attorneys, charges:

### The Defendants and Relevant Entities

All relevant times to this Information:

1. CC-1 was employed by the Asset Recovery Unit ("ARU") of the Metropolitan Transportation Authority ("MTA"), which has an office in New York, New York.

2. CC-2, was employed by the MTA as a car inspector at the Coney Island MTA facility.

3. TIMOUR ABRAMOV ("ABRAMOV"), the defendant, was employed by the MTA as a car inspector at the Coney Island MTA facility.

4. The MTA's ARU was responsible for selling excess products and materials that the MTA no longer needed. The ARU

used an online public website to auction the excess products and materials. To participate in the online public auctions, bidders submitted bid forms to the ARU's shared-email inbox. ARU employees had access to the shared-email inbox to collect and review bid forms. In general, the winning bidder of an online auction was the bidder who submitted the highest bid. ARU employees were required to ensure that the bids submitted were "blind bids," and thus, that all bidders submitted their bids without knowledge of the prices submitted by other competing bidders. Bidders were required to submit bids by 5:00 pm on the closing date. Pursuant to MTA regulations, MTA employees were prohibited from participating as bidders in the online auctions.

5.  A particular company ("Company X") operated a business in the State of New Jersey.

### The Scheme

6.  Beginning by at least in or about November 2019 and continuing until at least in or about February 2021, CC-1, CC-2, and ABRAMOV, the defendant, agreed to and did engage in a fraudulent scheme to obtain vehicles (*i.e.*, excess MTA products), specifically, Toyota Camrys and Paratransit buses, that belonged to the MTA.

7.  CC-1, who worked in the ARU as a sales specialist, accessed the ARU's shared-email inbox and obtained the bid forms and pricing information of other companies and individuals

(collectively, "the other bidders") who had submitted bids to the ARU for vehicles that were being auctioned through the ARU's online auction website. CC-1 then provided the other bidders' confidential pricing information to CC-2 and ABRAMOV, the defendant, who subsequently submitted bid forms purportedly from Company X, shortly before the 5:00 pm bid deadline, which contained bid prices that were slightly higher than the other bidders' prices.

8. It was a further part of the scheme for CC-1, CC-2, and ABRAMOV, the defendant, to email Company X's bid forms to the ARU's shared-email inbox using an email address purportedly from Company X, which concealed their connection to bidding on the online auctions.

9. As a result of their fraudulent scheme, between November 2019 and February 2021, CC-1, CC-2, and ABRAMOV, the defendant, through using Company X as a "straw bidder," won five online public actions and consequently purchased 43 vehicles from the MTA, worth approximately $187,000, for which the MTA was paid, at least in part, through an interstate wire transfer from a bank account in the name of Company X.

10. After winning the online auctions and paying the MTA for the vehicles, CC-1, CC-2, and ABRAMOV, the defendant, resold the vehicles to the general public through, among other methods, public

auctions in Pennsylvania and on social media platforms, such as Facebook Marketplace.

## Statutory Allegations

11. From at least in or about November 2019 up to and including in or about February 2021, in the Southern District of New York and elsewhere, CC-1, CC-2, and ABRAMOV, the defendant, and others known and unknown, knowingly and willfully did conspire and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

12. It was a part and object of the conspiracy that CC-1 CC-2, and ABRAMOV, the defendant, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

_____  
DANIEL GLAD  
Acting Chief, New York Office  
U.S. Department of Justice  
Antitrust Division

_____  
STEVEN TUGANDER  
Acting Assistant Chief,  
New York Office  
U.S. Department of Justice  
Antitrust Division

_____  
JONATHAN S. KANTER  
Assistant Attorney General  
U.S. Department of Justice  
Antitrust Division

_____  
MILOSZ GUDZOWSKI  
Trial Attorney  
U.S. Department of Justice  
Antitrust Division